WALTER DUFFER v. THE STATE.

No. 13155.  Delivered March 26, 1930.
Rehearing denied May 7, 1930.
Reported in 27 S. W. (2d) 242.

514

The opinion states the case.

*O. W. Blocker* and *Pirkey & Atchley,* all of New Boston, for appellant.

*A. A. Dawson,* State's Attorney, of Austin, for the State.

HAWKIN.S, JUDGE.—The indictment charged in one count that Walter Duffer, Fuller Duffer and Sylvester Sanders sold intoxicating liquor to Ennis Fort and in another count that the three parties named possessed intoxicating liquor for the purpose of sale. The parties were tried jointly and all convicted under the count last named and each was assessed a punishment of one year in the penitentiary. Separate verdicts were returned and separate judgments entered and the cases reach this court under separate records as though there had been separate trials, but with identical transcripts and statements of facts.

The court did not charge on circumstantial evidence. No objection because of such omission was urged at the time of trial, neither was any special charge on the subject requested. It is contended here that the omission to charge upon circumstantial evidence was fundamental error. It has been held many times that in view of Articles 658 and 666 C. C. P. this court can not entertain a complaint that the court did not instruct on the law of circumstantial evidence where the point was not made in the court below. Charles v. State, 85 Tex. Cr. R. 534, 213 S. W. 266; Cobb v. State, 105 Tex. Cr. R. 81, 266 S. W. 1086; Givens v. State, 98 Tex. Cr. R. 651, 267 S. W. 725; Jazo v. State, No. 12,679, opinion delivered March 12, 1930.

The chief contention is that the evidence is insufficient to support the conviction of any of the appellants, and as all three of the cases turn upon this point the evidence will be somewhat fully set out. The name of Jim Ennis Fort was indorsed on the back of the indictment, but he had died about one week before the trial. The only count submitted to the jury was the one which charged possession for the purpose of sale. Walter and Fuller Duffer are white men, Sylvester Sanders is a negro. On the night the offense is alleged to have been committed a negro "festival" was in progress at Fort's house, and a poker game was "running" at Larry's house, the two houses being a half mile distant from each other by the road, but

only a quarter of a mile through a pasture. Fort was a negro, as are also the state's witnesses Norfleet, Larry, Jones and Tyson.

Tyson's testimony was in substance that while the poker game was in progress Sanders knocked on the door at Larry's and asked if two white men who were with him could come in; that they came in and after a few minutes the two white men went out and when they returned one of them had a white looking sack which he put on the floor near the stove; that some time later Norfleet and Fort came; that Fort said he had been drinking beer, said he was drunk, and that he was hunting whiskey; witness told Fort there was no whiskey there; that the Duffer boys said nothing at that time, but later Fort called them out and when they came back they measured out a quart of whiskey; he first saw the whiskey when they came back in. One of the white men had it. He said, "two white men went out and two white men came back in." The first witness saw of the whiskey was when they were measuring it up. He heard Fort ask for a bottle.

The substance of Larry's testimony follows: Sanders asked if two white men could come in, and when they came in one of the white men had a sack in his hand; witness did not know what was in the sack until Norfleet and Fort came, at which time he discovered whiskey was in the sack. Fort said he wanted some whiskey, and asked witness for a jar, but having no jar witness gave him a bottle, and Walter Duffer poured part of the whiskey from a jar into the bottle and Fort left with both the jar and bottle. Witness saw no money pass but heard Fort say part of it had been paid for and to come to the "supper" and he would pay the balance. The first time witness saw the whiskey it was in the white man's hand; witness saw the white men take one jar out of the sack, and saw the tops of two other jars in the sack, and the white man poured part of the whiskey from the jar he took out of the sack into the bottle witness had gotten at Fort's request. At the time this was going on Fuller Duffer was playing a harp and Sanders was engaged in the poker game. Witness says neither of them had anything to do with the transaction.

State's witness Jones says he saw no sack at Larry's, and both he and Norfleet testified that Fort brought the whiskey in the house and that the only connection either of the white men had with it was that Walter Duffer poured part of the whiskey into a bottle at the request of Fort.

Smith and Crowder, appellants' witnesses, testified that they together bought some whiskey from Fort at or near the latter's house

on the night in question. Smith was sure it was white whiskey and Crowder was positive that it was red whiskey they bought.

It appears from the testimony of all the appellants that Sanders did not live on the Duffer boys' place but did work some land for them and that they went to the dance, festival or supper—it being referred to in all three ways—at Fort's for the purpose of taking Sanders, and from there took him over to Larry's where the poker game was in progress. Both the Duffer boys testified that they took no whiskey to Larry's, had no sack with them, and sold no whiskey to Fort. Walter Duffer said he did pour some whiskey from a jar into a bottle at Fort's request, but that he had no other connection with it, and that Fort had the whiskey when he (Duffer) first saw it. Sanders testified that if the Duffer boys had any whiskey or took any to Larry's witness knew nothing of it. When the poker game ceased all three of the appellants went back by Fort's house, but found things there in confusion as the festival had broken up in a shooting scrape. It is left to inference whether the return of appellants by way of Fort's had any connection with Larry's evidence to the effect that Fort had said "part of the whiskey was paid for and to come by the supper he would pay for the balance."

It was the province of the jury to determine the credibility of the witnesses and the weight to be given their testimony. If the jury accepted as true the evidence given by Tyson and Larry it is clear that such testimony supports the verdict as to Walter Duffer and Fuller Duffer, and as to them the judgments should be affirmed.

We have reached a different conclusion as to appellant Sanders. All the witnesses agree that when he reached Larry's, Sanders at once got down on the floor with the other negroes, engaged in the poker game and had nothing whatever to do with any transaction regarding the whiskey. The only thing that tends to connect Sanders with the possession of the whiskey is that the white men brought him to the festival and poker game, and that he asked if they might come in. Assuming that the white men brought the whiskey with them the circumstances at most do nothing more than fix Sanders as present. We regard the evidence as insufficient to establish that Sanders had advised or agreed to the commission of the offense of possessing intoxicating liquor for the purpose of sale, and therefore his status as a principal in the offense could not be fixed by his mere presence under Art. 69, P. C. Neither do we think the circumstances sufficiently cogent to support the inference that Sanders aided by acts or encouraged by words or gestures the Duffer boys in the

commission of the offense. Art. 66, P. C. It has been so often decided that "mere presence" when an offense is committed does not render one a principal in the crime that any discussion of the subject is superfluous. For authorities see Sec. 681, Branch's Ann. Tex. P. C.; Note 1, under Art. 65, Vernon's Ann. Cr. Statutes of Texas, P. C., Vol. 1. It follows that in our opinion the judgment as to appellant Sanders must be reversed and the cause as to him be remanded.

This particular case being docketed in this court as against Walter Duffer alone, the judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—In an ingenious argument the appellant's counsel in his motion for rehearing insists that the evidence was wholly circumstantial and that tested by the law governing that class of testimony was not sufficient to show that the whiskey in question was possessed for the purpose of sale. A rather comprehensive statement of the evidence is made in the original opinion. A repetition of it is not deemed desirable. From Tyson's testimony, however, it appears that when Fort stated that he was hunting whiskey and was told that there was none, the Duffer boys were nearby. They said nothing but afterwards Fort called them and they went out with him. They came back a little later and measured out a quart of whiskey. From his testimony we quote:

"I first saw the whiskey when they went out doors and came back in. One of the white fellows had it then. I don't know which one. * * * He poured it in the bottle and gave it to Jim Ennis."

The witness Larry testified that he saw the Duffer boys have a sack. He said:

"I saw them pour something out of a jar. * * * They had a sack with them when they came in. * * * I discovered that it was whiskey in the sack when these two other fellows come there— Jim Ennis Fort and John Norfleet. Jim Ennis said he wanted whiskey. * * * He got one quart. When I saw it a white man had it up in his hand. * * * I don't know where he got it. * * * Ennis asked for a jar. I gave him a bottle and he poured some of it out and left the other in the jar. * * * He said part of it had been paid for and to come to the supper and he would pay the other. * * * I just saw these men let him have the whiskey. He came and took it from the white fellows. * * * The first

time I saw the whiskey it was in the white man's hand. * * * I saw two jars in the sack. One had been taken out. I saw the tops when they were pouring the whiskey out. I could see the tops, not the jars. I saw him take the first jar out of the sack."

We are constrained to conclude from the whole testimony (only a part of which has been quoted above but the substance of which is set out in the original opinion), that the evidence is direct to the effect that the whiskey was sold to Jim Ennis Fort and that in making the sale and handling the whiskey the appellant, Walter Duffer, and Fuller Duffer acted together in such a manner as to justify the conclusion that they were principal offenders, and that the circumstances were such as justified the jury in the conclusion that the two—Walter Duffer and Fuller Duffer—possessed more than a quart of intoxicating liquor.

The motion for rehearing is overruled.

*Overruled.*